THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
VÍCTOR LÓPEZ ARISTUD, Defendant and Appellant.

No. CR-66-462.     Decided November 8, 1967.

*A. De Jesús Matos* and *R. De Jesús Cintrón* for appellant. *J. B.
Fernández Badillo, Solicitor General,* and *Peter Ortiz, As-
sistant Solicitor General,* for The People.

PER CURIAM: Appellant was convicted by a court without
a jury of a violation of § 6 of the Weapons Law, a mis-
demeanor. 25 L.P.R.A. § 416. The only error he sets forth
consists of challenging the weighing of the evidence made
by the court. The assignment lacks merit. We explain our-
selves below.

The evidence reveals that, because of a fight which took
place in front of a cafeteria, at dawn, appellant drew out
a revolver which he carried in his waist, and fired two shots
at Anastasio Dávila. At that moment—it was three o'clock
in the morning—the owner of the cafeteria was closing the
business. One of the bullets perforated a door of the store,
and was imbedded in the wood of the counter. It was
extracted from there by the policeman who later came to
investigate the facts.

The prosecution evidence consisted of the testimony of
Anastasio; of María de los Ángeles Martínez, the owner
of the business; and of policeman Emilio Rohena. We shall
refer to the evidence for the defense hereinafter.

Anastasio Dávila testified, in relation to the shots, the
following:

: "PROSECUTING ATTORNEY: Up to what part of the business did the defendant come?

A—He went around to the rear of the business, up to the door which closes the business.

Q—How was the business?

A—It was closed.

Q—And, what happened?

A—He turned back, when he went down the steps which lead to the highway, he repeated the same word which Miguel Castro had said.

Q—What did he say?

A—He shit on the mother of those from Lajas.

Q—Who?

A—The defendant; he said, because of these people the business here was closed, and then he went down towards the highway. Then, Miguel Castro turned around and he got excited and then punched me.

Q—Who?

A—Miguel Castro.

MR. DE JESÚS: Who is Miguel Castro?

JUDGE: A man who, this man says, was there, who, according to him, used dirty words first, according to him. Continue.

A—When he punched me, I took him by the hand and pushed him backwards, then Miguel and Víctor, the two of them, threw themselves upon me, then, I grabbed a guy and I put him in the middle, and in that interval two shots were fired.

Q—Who fired them?

A—Víctor López.

Q—How many shots?

A—Two.

Q—With what did this man, Víctor López, fire the shots?

A—With a revolver.

Q—Did you see that revolver?

A—Yes, sir.

Q—How was it?

A—It was a black revolver with a long barrel, about three inches.

Q—When the defendant fired the shots, in what position were you, in relation to the business of Doña María Martínez?

A—I was with my back towards the store, towards the business, and he was facing the business.

Q—Who?

A—Víctor López.

JUDGE: You say you were with your back towards the business?

A—With my back towards the business, facing him." (T. E. 11–13.)

Later the same witness testified as follows:

"PROSECUTING ATTORNEY: In what hand did he have the revolver?

A—In his right hand.

Q—And at what was he aiming?

A—At me.

Q—And immediately, you said, you ran towards where?

A—Towards María de los Ángeles' house." (T. E. 65.)

The María de los Ángeles mentioned there is the same Mrs. Martínez, owner of the business, who lived on the top floor of the same.

The witness María de los Ángeles Martínez testified that about three o'clock in the morning she heard two shots, and she went up the stairs towards her house and there, in front of the door, she found Anastasio Dávila "very pale and nervous." She let him in. She also testified that later she was able to verify that the door of the business had a hole in it, and that a bullet was embedded in the counter.

Policeman Emilio Rohena testified that Mrs. María de los Ángeles Martínez went to headquarters and reported what had occurred. That he went to the scene of the crime, and there he saw the perforation in the door and the bullet embedded in the counter. Later he extracted the bullet and he kept it. He identified it at the trial.

The evidence for the defense consisted in the testimony of Police Lieutenant Luis Vázquez, of Joseph Berríos and of Gregorio Castillo.

Lieutenant Vázquez did not witness the facts nor testified as to them. He testified that Miguel Castro has a revolver, Colt, 38 caliber, registered; that the bullet which was shown to him at the trial was, in his opinion, a 38-caliber bullet, that that revolver could have fired that bullet.

Assuming that all that Lieutenant Vázquez testified is true, nothing in his testimony is conflicting with the prosecution evidence. If the bullet was 38-caliber, any gun of 38-caliber could have fired it. No doubt there are thousands of 38-caliber revolvers in the country, and any one of them could have fired that bullet. No doubt, because he was not an expert on ballistics and because he did not make a minute study in the laboratory of the bullet and the gun, the Lieutenant could not say, and did not say, that that bullet had been fired from Miguel Castro's revolver. There is no evidence in the record either that Miguel Castro was armed with a revolver at that place at that time.

Witness Joseph Berríos testified that he was a "Private Detective." He did not witness the facts, nor did he testify as to them. He testified that after the occurrence he went to the business and he took separate measurements of the building, the highway and the counter. He testified that he saw the perforation in the door and a small hole in the counter. He testified that he worked for Roberto de Jesús Cintrón, who was appellant's counsel at the trial.

The third and last witness for the defense was Gregorio Castillo. He testified that while he talked with appellant, he heard a shot; that he did not see him shoot; that he did not see him with any weapon; that what he saw in his hands was a green and white lighter. That after the shot he did not make any investigation nor did he ask anyone, not even the defendant, what had happened; that he went home.

As it may be noted, of the six witnesses for the defense and for the prosecution who testified, the only conflicting testimony is Gregorio Castillo's. It is incumbent upon the trial court

to settle this conflict in the evidence, and it did so. In the record, which we have read in its entirety there is ground to support the determination of the court.

The judgment appealed from will be affirmed.

Mr. Justice Belaval did not participate herein.